FILED
March 02, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
           DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHON OWEN SHROYER, | § | No. 1:25-cv-00164-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| MEDIA MATTERS FOR AMERICA; CHLOE SIMON; CAMDEN CARTER; SALON.COM, LLC; and AMANDA MARCOTTE, | § § § § § § | |
| | § | |
| *Defendants*. | § | |

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court is (1) a Motion to Dismiss (Dkt. # 22) filed by Defendants Camden Carter, Media Matters for America, and Chloe Simon (collectively, "Media Matters Defendants"); and (2) a Motion to Dismiss (Dkt. # 23) filed by Defendants Amanda Marcotte and Salon.com, LLC (collectively, "Salon Defendants"). Plaintiff Jonathon Owen Shroyer ("Plaintiff" or "Shroyer") filed a joint response to both motions. (Dkt. # 21.) The Media Matters Defendants and Salon Defendants each filed a separate reply. (Dkts. ## 26, 27.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the filings and the relevant law, the Court **GRANTS** (1) Defendants Camden Carter, Media Matters for America, and Chloe Simon's

1

Motion to Dismiss (Dkt. # 22), and (2) Defendants Amanda Marcotte and Salon.com, LLC's Motion to Dismiss (Dkt. # 23), both **WITH LEAVE TO AMEND**.

BACKGROUND

This case arises from allegedly defamatory statements published by Defendants about Plaintiff. Plaintiff is a well-known journalist, reporter, and host of a political talk show. (Dkt. # 1 at 3.) Plaintiff "was present in Washington, D.C., on January 6, 2021, covering President Trump's speech and the people's march to the Capitol." (Id.) Plaintiff later pleaded guilty to one count of violating 18 U.S.C. § 1752(a)(1), admitting that he "knowingly entered and remained on restricted grounds without lawful authority to do so[,]" and was subsequently sentenced to sixty days' imprisonment.[1] (See Dkts. ## 22-10, 22-11.) Plaintiff maintains that he never engaged in any violence and was never convicted of any violent crimes or disorderly conduct associated with the events of January 6, 2021. (Dkt. # 1 at 5–7.)

On or about May 9, 2024, Defendant Media Matters for America published an article, written by Defendants Chloe Simon and Camden Carter, with

---

[1] Courts may take judicial notice of matters of public record when deciding a motion to dismiss, including Plaintiff's guilty plea and judgment. See Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 737 (5th Cir. 2019); see also USA v. Jonathon Shroyer, No. 21-CR-542-TJK-1, Dkts. ## 38, 50.

2

the headline: "Far-right figures are promoting raw milk amid bird flu outbreak in dairy cows" ("Media Matters Article"). (Dkts. ## 1 at 4; 1-2 at 5–8.) The Media Matters Article lists several examples of prominent far-right media figures promoting the consumption of raw milk, and as one such example, refers to Plaintiff as "Infowars host and convicted Capitol rioter Owen Shroyer." (Dkt. # 1-2 at 7.)

On or about October 23, 2024, Defendant Salon.com published an article, written by Defendant Amanda Marcotte, with the headline: "MAGA bashes 'single issue' abortion voters – but Florida shows these women are the smartest citizens" ("Salon Article"). (Dkts. ## 1 at 6; 1-4 at 5–14.) The Salon Article begins by discussing Plaintiff's posted video titled "College Women Admit They Only Vote For Kamala Because of Abortion[.]" The Salon Article refers to Plaintiff as "[c]onvicted January 6 insurrectionist and professional conspiracy theorist Owen Shroyer." (Dkt. # 1-4 at 6.)

Plaintiff, by and through his counsel, sent demand letters to the Salon Defendants and Media Matters Defendants, and the allegedly defamatory statements were eventually removed. (Dkt. # 1 at 6, 8.)

On February 4, 2025, Plaintiff initiated this lawsuit, bringing claims of libel against all Defendants. (Id. at 8.) On May 21, 2025, both Media Matters Defendants and Salon Defendants filed motions to dismiss. (Dkts. # 22, 23.) The

motions are ripe for consideration. (See Dkts. ## 21, 26, 27.) Both Media Matters Defendants and Salon Defendants seek dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule 12(b)(3), and failure to state a claim pursuant to Rule 12(b)(6). (Dkts. ## 22, 23.)

## LEGAL STANDARD

I. Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. A court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). "The Texas long-arm statute extends to the limits of the Constitution," and a Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth

Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant.  Stroman, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction).  If a defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'" Id. (quoting Helicopteros, 466 U.S. at 415 n. 9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction.  Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002); Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000).  Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results

5

from the defendant's forum-related contacts; and (3) whether the
exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction. Id.

II.    Motion to Dismiss under Rule 12(b)(3)

A party moving to dismiss based on improper venue does so pursuant to Federal Rule of Civil Procedure 12(b)(3). "In an action not based on diversity, proper venue lies in either '(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.'" McClintock v. Sch. Bd. E. Feliciana Par., 299 Fed. Appx. 363, 365 (5th Cir. 2008) (citing 28 U.S.C. § 1391(b)).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. Ginter ex rel.

6

Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined that a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. See 28 U.S.C. § 1406(a).

III.     Motion to Dismiss under Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well–pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead

"specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

## DISCUSSION

The Media Matters Defendants and Salon Defendants seek dismissal for lack of personal jurisdiction. A court must first address jurisdictional matters, and if jurisdiction is lacking, the court will not reach the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1995). Therefore, the Court will first consider whether it has personal jurisdiction over the Media Matters Defendants and Salon Defendants.

Neither party asserts that the Court has general personal jurisdiction over Defendants. (Dks. ## 22 at 21–22; 23 at 14–16; 21 at 13–23.) Instead, Plaintiff argues that the Court has specific personal jurisdiction over Defendants

under the Calder "effects test." (Dkt. # 21 at 16, 21.) Specific jurisdiction affords a narrower authority and will apply if a defendant purposefully avails itself of the opportunity to do business in the forum state and the suit arises out of or relates to the defendant's contacts with the forum state. Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004). The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Burger King, 471 U.S. at 472.

Calder v. Jones, 465 U.S. 783, 789 (1984), adopted a doctrine colloquially referred to as the "effects" test. The Calder effects test permits courts to exercise specific personal jurisdiction over "an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there." Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 425 (5th Cir. 2005). In Calder:

> The . . . story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

465 U.S. at 788–89. The Fifth Circuit examined not only the effects of the defendants' actions "but that the defendants had directed their actions towards the

9

forum, and knew their effects would be felt there." Fielding, 415 F.3d at 425 (citing Calder, 465 U.S. at 789–90).  It held that "to exercise specific jurisdiction in a libel action, the 'aim' of the [publisher] under the Calder test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." Id. at 426 (citing Revell v. Lidov, 317 F.3d 467, 474 n.48 (5th Cir. 2002).

   Plaintiff argues that this Court has specific personal jurisdiction over both sets of Defendants under the Calder effects test because: (1) Defendants intentionally directed their defamatory conduct at Texas, (2) the brunt of the harm is felt in Texas, and (3) Defendants purposefully availed themselves of Texas by targeting a Texas resident with nationwide publication.  (Dkt. # 21 at 16–17, 21.)

   However, the mere fact that Plaintiff feels the brunt of the harm in Texas is insufficient.  Fifth Circuit case law is clear that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under Calder." Revell, 317 F.3d at 473.  Rather, "[t]he key question, under Calder, is whether the forum state was 'the focal point both of the [alleged libel] and of the harm suffered.'" Johnson v. TheHuffingtonPost.com, Inc., 21 F.4th 314, 318 (5th Cir. 2021) (quoting Calder, 465 U.S. at 789.)  As stated, that inquiry requires the Court to assess both the subject matter of the publication and the sources relied upon.  Moreover, the alleged defamatory material must be directed at a Texas

audience as opposed to simply being made available to Texas residents in the same way as anyone else with internet access.  Revell, 317 F.3d at 474–75.

I.   Media Matters Defendants

In further support of this Court's personal jurisdiction over the Media Matters Defendants specifically, Plaintiff argues that the Media Matters Article aims to criticize raw milk consumption, and "Texas was among the top five states with the highest milk production."  (Dkt. # 21 at 18.)  Moreover, Plaintiff argues, "the article overwhelmingly features statements made in Texas by individuals in Texas."  (Id.)  Lastly, Plaintiff argues that the article cites news stories and websites that concern events in Texas.  (Id. at 19.)

The Court finds these arguments unpersuasive.  The Media Matters Article discusses an outbreak of the bird flu in dairy cows nationwide, and the fact that Texas is one of the top five highest milk producers in no way makes Texas the focal point of the article.  In fact, the Media Matters Article mentions Texas only once, and it is wholly unrelated to the allegedly defamatory statement about Plaintiff.  (See Dkt. # 1-2 at 6) ("several cats in Texas died after reportedly testing positive for bird flu after drinking raw milk").  The quotes and references to individuals and organizations whom Plaintiff claims all reside, work, or publish content in Texas similarly hold little weight because it is not at all clear from the

11

article itself that they have any connection to Texas.[2]  The same logic applies to the Media Matters Article's citation to a separate NBC article, which details the story of a Texas dairy worker.  (See id. at 3.)  The citation itself does not so much as reference Texas and a reader would have to find the cited article to ever read the word, "Texas."  These "references" are so attenuated a connection to Texas that they hardly show that Texas is the focal point of the alleged libel or that the Media Matters Defendants otherwise targeted Texas readers.  See Revell, 317 F.3d at 473 (declining personal jurisdiction where the article "contain[ed] no reference to Texas, nor does it refer to the Texas activities of [the plaintiff], and it was not directed at Texas readers as distinguished from readers in other states."); Fielding, 415 F.3d at 426–27 (differentiating Calder to say that "[defendant's] references to Texas were merely collateral to the focus of the articles.").  Additionally, the allegedly defamatory statement about Plaintiff, calling him a "convicted Capitol

---

[2] Additionally, to the extent the Media Matters Defendants can be said to have relied on Texas sources by referencing individuals who happen to live or work in Texas, their reliance on these Texas sources was minimal.  See Fielding, 415 F.3d at 426 (finding that the defendant's interviewing of Texas citizens and hiring of a contractor to purchase a Texas college yearbook were "fleeting contacts" that "led to no new substantial disclosures and supplied little more than the biographical backdrop . . . .").  Further, the Media Matters Defendants maintain that they did not use Texas sources, travel to Texas to work on the article, or know Plaintiff lived in Texas while writing the article.  (Dkts. ## 22-8 at ¶ 7; 22-9 at ¶ 7.)  See Revell, 317 F.3d at 469 ("In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" (quoting Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985))).

rioter," concerns Plaintiff's conduct in Washington, D.C., not Texas. (See Dkt. # 1-2 at 7.)

Lastly, any argument that the Media Matters Defendants are subject to this Court's personal jurisdiction because they have demonstrated substantial commercial interest in Texas is irrelevant. Plaintiff points to Media Matters' interest in acquiring InfoWars in bankruptcy auction proceedings in 2024. (Dkt. # 21 at 20.) Not only did this occur after the Media Matter Defendants published the alleged defamatory statements about Plaintiff, but it is wholly unrelated to those statements. See Johnson, 21 F.4th at 317–318 ("A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it.").

Based on the foregoing, the Court finds that Plaintiff has failed to establish personal jurisdiction over the Media Matters Defendants. As such, the Court will not reach the remaining issues regarding venue and the merits. Accordingly, the Court **GRANTS** the Media Matters Defendants' Motion to Dismiss (Dkt. # 22) **WITH LEAVE TO AMEND**.

II.  Salon Defendants

Many of Plaintiff's allegations and arguments concerning personal jurisdiction over the Salon Defendants are similar to that of the Media Matters Defendants and thus fail for the same reasons. However, the analysis does differ

13

slightly because Plaintiff also contends that the Salon Defendants are subject to this Court's personal jurisdiction because Salon.com operates an interactive website, solicits subscriptions from Texas users, and generates revenue from Texas users.[3] (Dkt. # 21 at 23.)

In Johnson, the Fifth Circuit clarified that in defamation cases in which the defendant's website is the claimed basis for specific jurisdiction, the website's interactivity is a prerequisite to the standard jurisdictional inquiry. Johnson, 21 F.4th at 318–19 (citing Revell, 317 F.3d at 472). The Fifth Circuit found that even though the website displayed ads from Texas-based advertisers, used visitors' location data to tailor advertisements, and sold ad-free experiences and merchandise, this activity was insufficient to confer personal jurisdiction because this activity did not target Texans specifically and/or was unrelated to the plaintiff's libel claim. Johnson, 21 F.4th at 320–22.

Here, Plaintiff does not allege any features of Salon.com or conduct by the Salon Defendants that differs from that which the Johnson court found

---

[3] Plaintiff does make one conclusory statement that Media Matters "solicits subscribers and advertising revenue from Texas residents . . . ." (Dkt. # 21 at 10.) However, the Media Matters Defendants maintain that "Media Matters, a nonprofit organization, has no ads on its website, and it does not generate any advertising revenue." (Dkt. # 26 at 3 n.1; see also Dkts. ## 22-9 at ¶ 9, 22-8 at ¶ 9.) Nor does the Media Matters website permit readers to comment on articles. (Dkt. # 22-7 at ¶13.) Because neither party meaningfully discussed whether the Media Matters website is interactive, neither does the Court.

14

insufficient to confer personal jurisdiction.  Plaintiff argues that "Salon.com operates an interactive website that displays advertisements to Texas residents, solicits subscriptions from Texas users for ad-free experiences, generates revenue from Texas-based readers and advertisers, and is freely accessible to and regularly accessed by Texas residents."  (Dkt. # 21 at 23.)  However, "[a]ccessibility alone cannot sustain our jurisdiction."  Id. at 320.  As to the display of advertisements and solicitation of subscriptions that generates revenue, "[t]hird-party ads on [defendant's] site reflect no such aiming" towards Texas and "neither caused nor relate to the harm that the story caused."  Id. at 321.  To put it plainly: "as to a libel claim, a website selling ads, merchandise, and ad-free experiences to all comers is not enough."  Id. at 326.

    Although the Court may end the jurisdictional analysis there, Plaintiff still fails to demonstrate personal jurisdiction over the Salon Defendants at the next stage of the jurisdictional inquiry for the same reasons this Court lacks jurisdiction over the Media Matters Defendants.  See id. at 318 ("If the site is passive . . . jurisdiction is unavailable, full stop.").

    The Salon Article, written by Defendant Marcotte, discusses prominent right-wing individuals' criticism of women's positions on abortion and its effect on their choice of candidate.  (See Dkt. # 1-4.)  The Salon Article begins by using one of Plaintiff's tweets as an example.  (Id. at 6.)  Defendant Marcotte

15

then discusses other relevant political events and provides her own political commentary on the issue. (Id. at 6–13.) The overall message of the Salon Article pertains to nationwide politics, not Texas specifically. The only mention of Texas is to describe Texas Attorney General Ken Paxton's strict enforcement of the state's abortion ban. (Id. at 10–11.) This reference to Texas has no relation to the allegedly defamatory statement concerning Plaintiff and is in no way the focus of the article. See Fielding, 415 F.3d at 426–27 ("[defendant's] references to Texas were merely collateral to the focus of the articles."). If the Salon Article can be said to be targeting *any* singular state, it would be Florida, which is featured in the title of the article and is discussed at much greater length throughout. (See id. at 5, 7–9.) Moreover, the Texas reference occurs several paragraphs after the allegedly defamatory statement against Plaintiff, and there is nothing on the face of the defamatory statement itself that connects Plaintiff to Texas. (See id. at 6.) Lastly, Plaintiff again argues that the Salon Article uses Texas sources because it cites a separate Salon.com article that discusses Texas's abortion ban. (Dkt. # 21 at 23.) However, the Salon Article uses hyperlinks and thus it is not even clear, without clicking on each hyperlink, where this article appears, and it certainly is not clear from the face of the Salon Article that the hyperlinked article concerns Texas. (See generally Dkt. # 1-4.) Once again, this reference to Texas is too attenuated and does not relate to the allegedly defamatory statement against Plaintiff.

16

Based on the foregoing, the Court finds that Plaintiff has failed to establish personal jurisdiction over the Salon Defendants. As such, the Court will not reach the remaining issues regarding venue and the merits. Accordingly, the Court **GRANTS** the Salon Defendants' Motion to Dismiss (Dkt. # 23) **WITH LEAVE TO AMEND**.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** (1) Defendants Camden Carter, Media Matters for America, and Chloe Simon's Motion to Dismiss (Dkt. # 22), and (2) Defendants Amanda Marcotte and Salon.com, LLC's Motion to Dismiss (Dkt. # 23). Plaintiff Jonathon Owen Shroyer has **LEAVE TO AMEND** his complaint no later than thirty (30) days from the date of this Order to address the deficiencies discussed. Failure to do so will result in the Court's dismissal of these claims without prejudice.

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, March 2, 2026.

_____
David Alan Ezra
Senior United States District Judge